2006 UT App 429

**Matthew MARCHAND, Petitioner and Appellee,**

v.

**Kristie MARCHAND, Respondent and Appellant.**

**No. 20051105–CA.**

Court of Appeals of Utah.

Oct. 19, 2006.

---

David Pedrazas, Law Office of David A. Pedrazas, Salt Lake City, for Appellant.

Mary C. Corporon, Mary Cline, Corporon Williams & Bradford, Salt Lake City, for Appellee.

Before GREENWOOD, Associate Presiding Judge, BILLINGS, and McHUGH, JJ.

## OPINION

McHUGH, Judge:

¶ 1 Kristie Marchand (Mother) appeals the trial court's award of custody of her daughter (Daughter), to her ex-husband, Matthew Marchand (Father). She also argues that the trial court erred by denying her motion for a new trial and that her trial counsel was ineffective. We affirm.

## BACKGROUND

¶ 2 Mother and Father were married from June 1999 to January 2001. The parties' divorce took place shortly after Daughter was born, and Mother was awarded custody. Father exercised visitation with Daughter after the divorce, although Mother's relocation to Arizona affected the frequency of those visits. Father eventually filed a petition seeking custody of Daughter, contending that Mother's boyfriend was emotionally abusive to Daughter and that Mother's frequent changes of residence created instability in the child's life. In a bifurcated proceeding, the trial court first determined that Father had demonstrated a material and substantial change in circumstances since the divorce decree. Then, after a three-day trial, the trial court awarded custody to Father, entering detailed findings supporting its conclusion that placement with Father was in the best interest of Daughter. Mother then filed

a motion for a new trial, which the trial court denied.

¶ 3 After being served with Father's petition to modify the custody decree, Mother allegedly paid her former boyfriend, Steve Burton, to take a paternity test to determine if he was Daughter's biological father. Mother and Burton had engaged in an extramarital affair while Mother was married to Father. According to Mother, the test came back with a 99.96 percent certainty that Burton was Daughter's biological father.[1] Although Mother had the results of the genetic testing long before trial, she never sought to admit them into evidence. Throughout trial, witnesses, attorneys, and even the court referred to Burton as the biological father of Daughter. Father, however, never stipulated or admitted that he was not the biological father of Daughter. Father testified that even if Daughter was not his biological child, that fact would not change his desire to obtain custody of her, provide for her support, and parent her.

## ISSUES AND STANDARD OF REVIEW

■ ¶ 4 Mother challenges the trial court's decision to award custody of Daughter to Father. "Proper adjudication of custody matters is highly dependent upon personal equations which the trial court is in an advantaged position to appraise." *Maughan v. Maughan*, 770 P.2d 156, 159 (Utah Ct.App. 1989) (quotations and citations omitted). The trial court is given "broad discretion" in making child custody awards, *id.*, and "[w]e will not substitute our judgment for that of the trial court unless the action it takes is so flagrantly unjust as to constitute an abuse of [that] discretion," *id.* at 160 (citation omitted).

■ ¶ 5 Mother also appeals the trial court's denial of her motion for a new trial. "A trial court has discretion in determining whether to grant or deny a motion for a new trial, and we will not reverse a trial court's decision absent clear abuse of that discre-

1. Mother immediately informed Daughter that Burton was her "real" father and arranged for

him to have contact with her.

tion." *State v. Harmon*, 956 P.2d 262, 265–66 (Utah 1998).

¶ 6 Finally, Mother argues that her trial attorney rendered ineffective assistance. "When the question of trial counsel ineffectiveness is raised for the first time on appeal and our review is confined to the trial court record, we determine, as a matter of law, whether defense counsel's performance constituted ineffective counsel." *State v. Ellifritz*, 835 P.2d 170, 175 (Utah Ct.App.1992) (citation omitted).

## ANALYSIS

### I. Mother's Challenge to the Custody Award

#### A. Parental Presumption

¶ 7 On appeal, Mother first argues that the trial court erred by not taking into account the "parental presumption" in awarding custody to Father. "In a controversy over custody, the paramount consideration is the best interest of the child, but where one party to the controversy is a nonparent, there is a presumption in favor of the natural parent." *Hutchison v. Hutchison*, 649 P.2d 38, 40 (Utah 1982). The presumption

> recognizes the natural right and authority of the parent to the child's custody. It is rooted in the common experience of mankind, which teaches that parent and child normally share a strong attachment or bond for each other, that a natural parent will normally sacrifice personal interest and welfare for the child's benefit, and that a natural parent is normally more sympathetic and understanding and better able to win the confidence and love of the child than anyone else.

*Id.* (alterations, quotations, and citations omitted). The parental presumption can be rebutted only by establishing that a parent

> lacks all three of the characteristics that give rise to the presumption: that no strong mutual bond exists, that the parent has not demonstrated a willingness to sacrifice his or her own interest and welfare for the child's, and that the parent lacks the sympathy for and understanding of the

child that is characteristic of parents generally.

*Id.* at 41. If the parental presumption is rebutted, then the parties competing for custody stand on "equal footing," and custody is determined by examining factors relating to the best interest of the child. *Id.* Mother claims that she and Burton are the biological parents of Daughter and, therefore, she was entitled to the application of the parental presumption against Father in determining custody. We disagree.

¶ 8 After reviewing the record in this case, we conclude that Mother failed to raise the parental presumption in the trial court. "As a general rule, appellate courts will not consider an issue, including a constitutional argument, raised for the first time on appeal unless the trial court committed plain error or the case involves exceptional circumstances." *State v. Brown*, 856 P.2d 358, 359 (Utah Ct.App.1993). "The trial court is considered 'the proper forum in which to commence thoughtful and probing analysis' of issues." *Id.* at 360 (quoting *State v. Bobo*, 803 P.2d 1268, 1273 (Utah Ct.App. 1990)). "Failing to argue an issue and present pertinent evidence in that forum denies the trial court 'the opportunity to make any findings of fact or conclusions of law' pertinent to the claimed error." *Id.* (quoting *LeBaron & Assocs., Inc. v. Rebel Enters., Inc.*, 823 P.2d 479, 483 n. 6 (Utah Ct.App. 1991)).

¶ 9 Mother's failure to preserve this issue is demonstrated by the trial court's comments in the hearing on Mother's motion for a new trial:

> That matter [of paternity] was brought up and it was my memory that after it was brought up that there [were] no results of that test that were introduced into evidence and it kind of just stopped at that point and I asked, are people going to make an issue of this and it was my understanding that there wasn't an issue that was made of that.

Indeed, the record demonstrates several opportunities when Mother could have introduced the paternity test results and could have argued that the parental presumption

should apply. At one point during trial, the court specifically asked about the test and what was happening with a paternity action Burton filed in Arizona. The court also asked counsel several times during trial if there were any other issues to be addressed. Despite these opportunities, Mother never offered the DNA evidence or asked the court to apply the parental presumption in her favor. The failure to do so is fatal to her appeal.

### B. Presumption of Paternity

■ ¶ 10 The second reason Mother's argument fails is that Father and Mother, not Burton and Mother, are entitled to the parental presumption relating to Daughter. Father is the presumed father of Daughter because Daughter was born during the parties' marriage. *See* Utah Code Ann. § 78–45g–204(1)(a) (Supp.2006) ("A man is presumed to be the father of a child if ... he and the mother of the child are married to each other and the child is born during the marriage...."); *Pearson v. Pearson*, 2006 UT App 128, ¶ 35, 134 P.3d 173 ("[I]n the hopefully rare instance where a child born into a marriage is fathered by another man, the husband is nevertheless deemed the father of the child, with all concomitant rights and responsibilities ...."), *cert. granted*, 2006 Utah LEXIS 185 (Utah July 21, 2006) (No. 20060563–SC). This statutory presumption may be rebutted by "genetic test results that rebuttably identify another man as the father." Utah Code Ann. § 78–45g–607(3)(b) (Supp.2006).[2] Because Mother never introduced Burton's test results at trial, the presumption that Father is the natural father of Daughter remains intact. The trial court therefore did not err by failing to apply the parental presumption in this case.

### II. Motion for a New Trial

■ ¶ 11 Mother's next argument on appeal is that the trial court erred by failing to

grant her motion for a new trial. Mother argued in her motion for a new trial that because the parental presumption had not been applied at trial, an error of law occurred, *see* Utah R. Civ. P. 59(a)(7), there was insufficient evidence to justify the decision, *see id.* 59(a)(6), and the decision was "against law," *id.*[3] The trial court denied the motion based, in part, on the following grounds: the parties indicated that they did not wish to raise the paternity issue at trial; in the parties' divorce decree, the parties stipulated that Father was the natural father of Daughter and the trial court issued orders accordingly; Mother had Burton's genetic test results seventeen months before trial and thus they were not new evidence; and the trial court could not consider the test results in determining the outcome of the motion without having the results properly introduced at trial. We cannot say that the trial court abused its discretion in denying the motion for a new trial.

### III. Ineffective Assistance of Counsel

■ ¶ 12 Finally, Mother argues that a new trial should be granted because her attorney rendered ineffective assistance of counsel.

The general rule is that in civil cases a new trial will not be granted based upon the incompetence or negligence of one's own trial counsel. There are cases which recognize that under exigent or exceptional circumstances which appear to have resulted in an injustice, the court may be justified in granting a new trial.

*Jennings v. Stoker*, 652 P.2d 912, 913 (Utah 1982). Even if we were to recognize ineffective assistance of counsel as a proper ground for a new trial in a custody dispute, something we do not decide today, we are not convinced that this case presents the type of exigent or exceptional circumstances that would justify a new trial. Mother argues

---

**2.** The presumption may also be rebutted by "genetic test results that exclude the presumed father," "evidence that the presumed father and the mother of the child neither cohabited nor engaged in sexual intercourse with each other during the probable time of conception," or "an adjudication under [Utah Code sections 78–45g–601 to –623]." Utah Code Ann. § 78–45g–

607(3)(a)–(d) (Supp.2006). No such evidence was offered at trial.

**3.** Both Mother and Father had different counsel than their trial counsel at the time the motion for a new trial was filed.

that her prior counsel's failure to challenge Father's paternity by the admission of the genetic testing results and failure to ask that the parental presumption be applied in her favor was so negligent that a new trial should be granted. We disagree.

¶ 13 Mother's trial counsel could reasonably have concluded that an attack on Father's paternity, brought for the first time more than three years after Daughter's birth, would not be permitted. *See In re J.W.F.*, 799 P.2d 710, 713 (Utah 1990) ("In determining who can challenge the presumption of legitimacy, a paramount consideration should be preserving the stability of the marriage and protecting children from disruptive and unnecessary attacks upon their paternity."); *Pearson*, 2006 UT App 128 at ¶ 25, 134 P.3d 173 (rejecting biological father's attempt to challenge legitimacy of child born into marriage of biological mother and husband where biological father "had little interest or involvement in [the child's] life until he was approximately sixteen months of age"). Consequently, trial counsel may have intentionally rejected challenging Father's paternity, which would have also highlighted Mother's infidelity, in favor of arguing that Mother had been the custodial parent since Daughter's birth. Even if we were to find negligence of trial counsel an appropriate ground for a new trial in this context, we would not be willing to second-guess trial counsel's strategic decisions. *See Jennings*, 652 P.2d at 913–14 ("Mere differences in the theory of trial techniques are not sufficient to warrant the granting of a new trial.").

## CONCLUSION

¶ 14 The trial court did not err in failing to consider the parental presumption because the theory was not raised at trial and, furthermore, Father is the presumed natural father of Daughter. The trial court also did not abuse its discretion in denying Mother's motion for a new trial because it set forth adequate grounds for the denial. Finally, even assuming negligence of counsel could serve as a basis for a new trial in a custody case, we decline to second-guess trial counsel's strategic decisions. Affirmed.

¶ 15 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge and JUDITH M. BILLINGS, Judge.