IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Micah John Reller, | ) | OPINION |
| | ) | |
| Petitioner and Appellee, | ) | Case No. 20110457-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Karine Anesia Schlagel Toledo Reller, | ) | (November 16, 2012) |
| | ) | |
| Respondent and Appellee. | ) | 2012 UT App 323 |
| _____ | ) | |
| | ) | |
| Francis J. Argenziano, | ) | |
| | ) | |
| Intervenor and Appellant. | ) | |

-----

Third District, West Jordan Department, 064401133
The Honorable Terry L. Christiansen

Attorneys:    James A. McIntyre and Richard R. Golden, Salt Lake City, for Appellant
              Nathan B. Wall and Cobie W. Spevak, Salt Lake City, for Appellee
              Micah John Reller
              Laura J. Hansen-Pelcastre, Jessica S. Couser, and Ben W. Lieberman,
              Salt Lake City, for Appellee Karine Anesia Schlagel Toledo Reller[1]

-----

Before Judges Orme, Davis, and Voros.

---

[1]Laura J. Hansen-Pelcastre and Jessica S. Couser represented appellee Karine Reller through the briefing stage. They then withdrew as her counsel of record. Ben W. Lieberman represented her at oral argument.

ORME, Judge:

¶1    Appellant Francis Argenziano (Intervenor) intervened in the divorce proceedings of appellees Micah Reller (Husband) and Karine Reller (Wife), in an effort to ensure that Husband is held to be the legal father of Wife's child born during their marriage but actually fathered by Intervenor. We affirm the district court's final divorce decree determining that there were no children born of the marriage.


BACKGROUND

¶2    Husband and Wife were first divorced via a default decree in September 2006. That decree stated that there was one child resulting from the marriage. In June 2007, Husband petitioned to modify custody. At that time, Wife had sole physical custody of the child and Husband had visitation rights, as set by the default decree. That same month, Wife filed a response opposing Husband's petition to modify. In October 2007, Wife then filed her own petition to modify, wherein she asserted for the first time that Husband was not actually the father of her child.

¶3    Wife then sought to join Intervenor in the case so that he could be adjudicated as the father of her child. Intervenor was joined in the action in December 2007. In January 2008, Intervenor filed a motion to vacate the order joining him as a party. The commissioner recommended granting Intervenor's motion in May 2008, and the court entered an order to that effect. The last recommendation by the commissioner stated:

> If the existing adjudication of paternity was vacated, set
> aside, terminated, or dissolved in any manner under the
> laws of this state, then this court would have jurisdiction
> under the Utah Uniform Parentage Act to consider the issue
> of paternity and the respective rights and obligations of all
> parties under the relevant provisions of the Utah Code.

Husband and Wife then filed a stipulation to set aside the default divorce decree, which relief the district court granted in July 2008. In October of that year, Husband filed a motion to admit genetic testing, pursuant to the Utah Uniform Parentage Act. *See* Utah Code Ann. § 78B-15-613 (2008). At a hearing in December 2008, the commissioner

found the genetic testing sufficient to exclude Husband as the father of Wife's child.  In March 2009, the district court entered a stipulated partial decree of divorce, effectively divorcing Husband and Wife and setting forth findings adequate to rebut the parental presumption as to Husband, excluding him as the father of the child born during the marriage.

¶4     In September 2009, the State commenced a child support and paternity action against Intervenor.  Intervenor filed a motion to dismiss, contending that parentage had already been adjudicated in Husband and Wife's divorce proceeding.  The court denied that motion in May 2010, holding that paternity had not been conclusively determined before it was specifically raised by the parties.  The court ruled:

> While the parties to the proceedings . . . did not raise the issue of paternity to the court and the original decree did not therefore meet the requirements for a binding determination of paternity, this changed when the parties brought the issue of paternity to the Court to review through their subsequent stipulation.  The Court reviewed the stipulation, entered findings of fact, conclusions of law and then a bifurcated decree in 2009.  That bifurcated decree was based on genetic test results that excluded [Husband] as the presumed father of the child.  Utah Code Ann. § 78B-15-607(3)(a).  Because, in the context of the bifurcated decree, the question of paternity was raised, adjudicated and because the bifurcated decree specifically disclaims [Husband] as the father, under Utah Code Ann. § 78B-15-623, the Court adjudicated the child's paternity in that case.  The bifurcated decree is thus a binding determination of paternity under Utah Code Ann. § 78B-15-326.

On July 12, 2010, the State submitted notice of the results of additional genetic testing, confirming that Intervenor was the father of Wife's child.  The odds of his being the child's father were placed at greater than 34 billion to one,[2] but Intervenor objected to

---

[2]To put those odds in perspective, 34 billion is a number almost five times greater

(continued...)

the admission of those conclusive results on the basis that Husband had been adjudicated as the father in the divorce proceeding.

¶5      Intervenor was ordered in early February 2011 to pay significant child support to Wife, effective from November 2010.  Later that month, having successfully resisted being joined in this action earlier, Intervenor filed his own motion to intervene, which was granted.  Intervenor filed a timely notice of appeal from the district court order resolving all outstanding issues.

¶6      As it currently stands, Husband does not have a relationship with the child.  Intervenor has ongoing child support obligations to his child.  Both men seek to avoid being adjudicated as the father and to have any support obligations against them extinguished.  Wife, who earlier led Husband to believe the child was his, now prefers to have Intervenor adjudicated as the child's father, apparently believing he has greater financial means.


ISSUES AND STANDARDS OF REVIEW

¶7      Intervenor argues that the modified divorce decree determining that there were no children born of the marriage should be set aside and Husband should be adjudicated the father of Wife's child.  Specifically, Intervenor contends that the district court lacked subject matter jurisdiction to revisit its previous default divorce decree.  "Whether a trial court has subject matter jurisdiction presents a question of law which we review under a correction of error standard, giving no particular deference to the trial court's determination."  *Case v. Case*, 2004 UT App 423, ¶ 5, 103 P.3d 171 (citation and internal quotation marks omitted).

¶8      Intervenor further argues that res judicata—specifically, claim preclusion—bars the new adjudication of parentage.  Conversely, Husband argues that Intervenor is

_____

[2](...continued)
than the estimated number of people currently alive on planet Earth.  *See* Carl Haub, *How Many People Have Ever Lived on Earth?*, Population Reference Bureau (October 2011), http://www.prb.org/articles/2002/howmanypeoplehaveeverlivedonearth.aspx.  In lay terms, it's gotta be him!

precluded from challenging the final judgment in this action because the same issue and argument were presented, argued, and ruled upon in the separate paternity action. "Whether res judicata, and more specifically claim preclusion, 'bars an action presents a question of law' that we review for correctness." *Mack v. Utah State Dep't of Commerce*, 2009 UT 47, ¶ 26, 221 P.3d 194 (quoting *Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 17, 16 P.3d 1214).

¶9    Intervenor also argues that the parties were estopped from raising the issue of parentage after the entry of the first divorce decree.

> Claims based on equitable doctrines are mixed questions of fact and law. Accordingly, we defer to a trial court's factual findings unless there is clear error but review its legal conclusions for correctness. However, because of the fact-intensive nature of equitable doctrines, we grant the trial court broader discretion in applying the law to the facts.

*Richards v. Brown*, 2009 UT App 315, ¶ 11, 222 P.3d 69 (internal citations and quotation marks omitted), *aff'd*, 2012 UT 14, 274 P.3d 911. Because the Uniform Parentage Act governs this dispute, resolution of this issue requires statutory interpretation, presenting a question of law that we review for correctness. *See State v. Yazzie*, 2009 UT 14, ¶ 6, 203 P.3d 984; *Lilly v. Lilly*, 2011 UT App 53, ¶ 6, 250 P.3d 994.

¶10    While the parties concentrate their arguments on the merits, Husband and Wife also contend that Intervenor lacks standing to challenge the final divorce decree involving Husband and Wife. Standing presents a question of law. *See Blodgett v. Zions First Nat'l Bank*, 752 P.2d 901, 904 (Utah Ct. App. 1988).

ANALYSIS

¶11    As an initial matter, we are not persuaded that Intervenor lacks standing. Indeed, it is curious that Husband and Wife would now so contend, Wife having earlier

brought Intervenor into this proceeding so that his paternity could be adjudicated.[3]  It is enough for us that Intervenor "claims an interest relating to the . . . transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest[.]"  Utah R. Civ. P. 24(a).  *See Chen v. Stewart*, 2005 UT 68, ¶ 50, 123 P.3d 416 ("To satisfy the basic requirements of the traditional standing test, a party must allege that he or she suffered or will imminently suffer an injury that is fairly traceable to the conduct at issue such that a favorable decision is likely to redress the injury.") (citation and internal quotation marks omitted).  Accordingly, we consider Intervenor's appeal on its merits.

## I.  The District Court Retained Subject Matter Jurisdiction To Revisit Husband and Wife's Divorce Decree.

¶12    We must first determine whether the district court could revisit the terms of Husband and Wife's 2006 default divorce decree.  Intervenor argues that that decree, which recited that there was one child resulting from the marriage, conclusively determined Husband to be the father of Wife's child.

¶13    A provision of the Utah Uniform Parentage Act states that "[i]f the question of paternity has been raised in the pleadings in a divorce and the tribunal addresses the issue and enters an order, the parties are estopped from raising the issue again, and the order of the tribunal may not be challenged on the basis of material mistake of fact."  Utah Code Ann. § 78B-15-607(1)(a) (2008).  However, perfunctorily reciting in a default divorce decree that there was one child resulting from the marriage does not elevate the question of paternity to one that "the tribunal addresses" for purposes of the statute so as to estop the parties "from raising the issue again."  *See id.* (emphasis added).  *See also id*. § 78B-15-623(3) ("In a proceeding to dissolve a marriage, the tribunal is considered to have made an adjudication of the parentage of a child if the question of paternity is raised and the tribunal adjudicates according to Part 6, Adjudication of Parentage[.]").  *Cf. Elmer v. Elmer*, 776 P.2d 599, 603 (Utah 1989) (explaining that a stipulated child custody order is unadjudicated because it is "not based on an objective, impartial

---

[3]Of course, it is equally curious that Intervenor earlier resisted being joined in this action and got himself dismissed, only to later decide that he wanted back in.

determination of the best interests of the child" and "[b]y contrast, a judicial determination of custody . . . is based on an objective and impartial comparison").[4]

¶14    In its order dismissing Intervenor from the case in 2008, the district court astutely observed that, while Husband was the presumed father of Wife's child, "[i]f the existing adjudication of paternity[5] was vacated, set aside, terminated, or dissolved in any manner under the laws of this state, then this court would have jurisdiction under the Utah Uniform Parentage Act to consider the issue of paternity[.]"  The court concluded that the order could be revisited, and this conclusion is consistent with section 78B-15-617 of the Utah Uniform Parentage Act, which provides:  "The paternity of a child having a presumed, declarant, or *adjudicated* father may be disproved only by admissible results of genetic testing excluding that man as the father of the child or identifying another man as the father of the child."[6]  Utah Code Ann. § 78B-15-617(1) (2008) (emphasis added).  Therefore, we agree that the district court was not precluded from revisiting the issue of parentage in this divorce proceeding.

---

[4]Because we determine that the issue of paternity was not adjudicated in the initial decree, presumably because Husband did not suspect at that time that the child was not a product of the marriage, res judicata and collateral estoppel do not bar the parties from subsequently raising the issue.  *See Covington v. Josephson*, 888 P.2d 675, 678 (Utah Ct. App. 1994) ("[R]es judicata and collateral estoppel only apply where the issue 'was actually litigated' in the first action or the claim 'could and should have been raised in the first action.'") (citations omitted).

[5]We recognize the potential confusion in the court's use of the phrase "existing adjudication of paternity" in this order.  But the court goes on to say that if that order were "vacated, set aside, terminated, or dissolved in any manner," the court would have subject matter jurisdiction to determine paternity.  In context, then, the court used the term "adjudication of paternity" loosely—not in its term-of-art sense under the Utah Uniform Parentage Act.

[6]Likewise, the court is vested with the power to deny a motion for genetic testing or to disregard the test results.  *See* Utah Code Ann. § 78B-15-608 (2008).  The court's decision should be based upon the factors enumerated in the statute, which generally seek to preserve the relationship between a putative father and child.  *See id.* § 78B-15-608(2)(a)–(i).

## II. The District Court Properly Set Aside the Original Divorce Decree.

¶15    Having determined that the district court had not previously *adjudicated* parentage, we next turn to whether the district court properly set aside the original decree of divorce.  Intervenor argues that "Rule 60(b) was really the only path available to set aside the [d]ecree or the [a]djudication."  With that, we agree.  While Husband and Wife stipulated to vacate their default divorce decree, we conclude that the district court, familiar with the convoluted history of this case, construed the stipulation as being aimed at relief under rule 60(b).  *See generally Workers Compensation Fund v. Argonaut Ins. Co.*, 2011 UT 61, ¶ 15 n.5, 266 P.3d 792 (noting "that district courts have broad discretion in determining whether to construe a motion under rule 59 or rule 60(b) of the Utah Rules of Civil Procedure").

¶16    Rule 60(b) is "remedial and equitable [in] nature," affording the trial court the ability to provide relief "in the furtherance of justice."  *Menzies v. Galetka*, 2006 UT 81, ¶¶ 63, 77, 150 P.3d 480 (citing Utah R. Civ. P. 60(b)).  *See id.* ¶ 54 ("[A] district court should exercise its discretion in favor of granting relief so that controversies can be decided on the merits rather than on technicalities.").  While the court might have conceivably been within the realm of sound discretion had it chosen to adjudicate Husband as the father under the marital presumption, *see* Utah Code Ann. § 78B-15-204 (stating that a man is presumed to be the father of a child if the child was born during the time that the man was married to the child's mother), it was certainly within its discretion to allow genetic testing and admit the results, *cf. id*. § 78B-15-608 (granting the court the authority to deny a motion for genetic testing or to disregard the results).

¶17    Intervenor also argues that even if the court were to construe the parties' stipulation as being one for relief under rule 60(b), it should be deemed untimely.  However, Husband first became aware that he might not be the biological father of Wife's child in October 2007.  Less than a month later, Wife brought Intervenor into this action.  Husband reasonably believed that his parentage would be addressed through Wife's motion and the naming of Intervenor as the biological father.  Husband and Wife then proactively addressed the issue of parentage by stipulating to vacate their divorce decree just one day after the district court granted Intervenor's motion to vacate the order joining him as a party, simultaneously specifying that if the determination that Husband was the father was "vacated, set aside, terminated, or dissolved," the court could then consider the issue of parentage and actually adjudicate it.

¶18    "'In a controversy over custody, the paramount consideration is the best interest of the child, but where one party to the controversy is a nonparent, there is a presumption in favor of the natural parent.'" *Marchand v. Marchand*, 2006 UT App 429, ¶ 7, 147 P.3d 538 (quoting *Hutchison v. Hutchison*, 649 P.2d 38, 40 (Utah 1982)).  That presumption

> "is rooted in the common experience of mankind, which teaches that parent and child normally share a strong attachment or bond for each other, that a natural parent will normally sacrifice personal interest and welfare for the child's benefit, and that a natural parent is normally more sympathetic and understanding and better able to win the confidence and love of the child than anyone else."

*Id.* (quoting *Hutchison*, 649 P.2d at 40) (brackets and additional citations omitted).  The parental presumption is rebutted by establishing that a parent

> "lacks all three of the characteristics that give rise to the presumption:  that no strong mutual bond exists, that the parent has not demonstrated a willingness to sacrifice his or her own interest and welfare for the child's, and that the parent lacks the sympathy for and understanding of the child that is characteristic of parents generally."

*Id.* (quoting *Hutchison*, 649 P.2d at 41).  In *Marchand*, however, the presumption was applied in favor of the presumed father of a child born during the parties' marriage.  *Id.* ¶ 10.  In that case, the presumed father was wielding the parental presumption as a shield to maintain legal rights and obligations over a child that he had raised as his own.  Here, Husband is attempting to use the presumption as a sword to avoid responsibility for a child born during his marriage, albeit one he did not father and with whom he has not had a relationship for years.[7]

---

[7]We also note that *Marchand* held that "[b]ecause [the mother] never introduced [the biological father]'s test results at trial, the presumption that [the husband] is the natural father of [the child] remains intact."  *Marchand v. Marchand*, 2006 UT App 429, ¶

(continued...)

¶19    It is important to note that Husband's success in disavowing his parentage will not leave the child in the lurch.  It is true that the presumption has been rebutted, and it appears that Husband and the child have no mutual bond.  Nor has Husband indicated any willingness or interest in fostering a relationship with the child in the future.  Intervenor, however, has already been adjudicated as the father of the child in the separate action filed by the State.  In that action, Intervenor was ordered to pay child support to Wife—considerably more support than Husband would be required to pay were he held to be the father.  The least disruptive course of action—and the result that is in the long-term best interest of the child—is to affirm the district court's decision adjudicating Husband not to be the father.  This resolution dovetails completely with the determination in the separate proceeding brought against Intervenor holding that he is the child's father, and thus well serves the child's best interest.

---

[7](...continued)
10, 147 P.3d 538.  However, the "trial" referred to was a custody modification trial.  *See id.* ¶ 3.  In reaching its decision, the court relied upon the fact that

> the record demonstrates several opportunities when [the mother] could have introduced the paternity test results and could have argued that the parental presumption should apply.  At one point during trial, the court specifically asked about the test and what was happening with a paternity action [that the biological father] filed in Arizona.  The court also asked counsel several times during trial if there were any other issues to be addressed.  Despite these opportunities, [the mother] never offered the DNA evidence or asked the court to apply the parental presumption in her favor.

*Id.* ¶ 9.  The court's apparent openness to the district court's receipt of such evidence in the course of a petition to modify—held after a divorce decree had been previously entered—suggests that the *Marchand* decision does not foreclose raising the issue of parentage after a divorce decree has been entered.

CONCLUSION

¶20    The district court did not adjudicate parentage in entering the original default divorce decree, which recited that there was one child resulting from the marriage. Because the issue of parentage had not been adjudicated, the district court was not precluded from vacating the parties' divorce decree to allow for the adjudication that there was no child resulting from the marriage after it was conclusively determined that Husband was not the biological father of Wife's child.

¶21    Affirmed.


_____
Gregory K. Orme, Judge


-----


¶22    I CONCUR:


_____
James Z. Davis, Judge


-----


VOROS, Judge (dissenting):

¶23    I would dismiss this appeal for lack of jurisdiction on the ground that Argenziano—referred to in the majority opinion as "Intervenor"—lacks standing to appeal.

¶24    "'[S]tanding is a jurisdictional requirement that must be satisfied' before a court may entertain a controversy between two parties." *Jones v. Barlow*, 2007 UT 20, ¶ 12, 154 P.3d 808 (alteration in original) (quoting *Washington County Water Conservancy Dist. v.*

*Morgan*, 2003 UT 58, ¶ 6 n.2, 82 P.3d 1125). The party invoking jurisdiction bears the burden of establishing standing. *See Brown v. Division of Water Rights of Dep't of Natural Res.*, 2010 UT 14, ¶ 14, 228 P.3d 747.

¶25 The question here is not whether Argenziano had standing to intervene in the trial court, but whether he has standing to challenge the judgment of the trial court on appeal. "'On appeal, a party whose standing is challenged must show that he or she had standing under the traditional test in the original proceeding before the district court. *In addition*, an appellant generally must show both that he or she was a party or privy to the action below and that he or she is aggrieved by that court's judgment.'" *Chen v. Stewart*, 2005 UT 68, ¶ 50, 123 P.3d 416 (emphasis added) (quoting *Society of Professional Journalists v. Bullock*, 743 P.2d 1166, 1171 (Utah 1987)).

¶26 Argenziano cannot credibly claim to have been "a party or privy to the action below." *See Chen*, 2005 UT 68, ¶ 50. Argenziano's role in trial court proceedings was negligible, and related principally to whether he would participate in the proceedings. He was served with an Order of Joinder in December 2007. He swiftly moved to vacate the order joining him in the action; four months later, the court granted his motion. The divorce case accordingly proceeded without his involvement. Nearly three years later, dissatisfied with the direction the separate paternity case was heading, Argenziano filed a motion to intervene in this case. Two months later, in April 2011, the trial court entered a final decree of divorce. One month to the day after that, the court granted Argenziano's motion to intervene. He filed a Notice of Appeal the same day.

¶27 Although this is Argenziano's appeal, he does not appeal either order relating to him—the order granting his motion to vacate the Order of Joinder or the later order granting his motion to intervene. Instead, he challenges orders of the court entered during the period when Argenziano, at his own insistence, was not a party to the action. Having absented himself from the proceedings below, but dissatisfied with their outcome, he seeks to challenge that outcome on appeal. This case is thus both procedurally and substantively unlike *Pearson v. Pearson*, 2008 UT 24, 182 P.3d 353, where the supreme court reviewed a trial court's order allowing a biological father to intervene in a divorce proceeding to challenge the husband's presumption of paternity.

¶28 This case is more like *In re Adoption of M.J.B.*, 2011 UT App 50 (mem.), 248 P.3d 1039. There, we held that a biological father who was not a party to the adoption

proceeding below and did not attempt to intervene before filing his notice of appeal lacked standing to bring an appeal. *See id.* ¶ 4. Our holding was based on the rule that an "'appellant generally must show *both* that he or she was a party or privy to the action below and that he or she is aggrieved by that court's judgment.'" *Id.* (emphasis in original) (quoting *Chen*, 2005 UT 68, ¶ 50).

¶29    Because Argenziano extricated himself from the proceedings he now seeks to challenge on appeal and was granted intervenor status only after final judgment had been entered and the dispute ended, he lacks standing to challenge the final judgment. *See Ostler v. Buhler*, 1999 UT 99, ¶ 9 n.3, 989 P.2d 1073 ("The general rule is that intervention is not to be permitted after entry of judgment." (citation and internal quotation marks omitted)). *Cf. Wright v. Brown*, 574 P.2d 1154, 1155 (Utah 1978) (holding that an entity that had been "dismissed out on its own motion" lacked standing to appeal a default judgment because it was "no longer a party to the action" when the judgment was entered).

¶30    Furthermore, Argenziano fails to show that he "is aggrieved by [the lower] court's judgment." *See Chen*, 2005 UT 68, ¶ 50. An appellant must show that he "has actually been aggrieved" by the judgment, not that the judgment opens the door to the "future possibility" of injury. *See id.* ¶ 54; *see also In re Deseret Mortuary Co.*, 3 P.2d 267, 270 (Utah 1931). Argenziano is not a man whose paternity "is to be adjudicated" or was adjudicated below. *See* Utah Code Ann. § 78B-15-602(3) (LexisNexis 2008).[1] The judgment appealed from ruled that Husband was not the father of the child, but it did not rule that Argenziano or any other man was. Although the genetic test results that excluded Husband also identified Argenziano as the child's father, the court made no finding on that issue. Indeed, the final order from which Argenziano appeals does not even mention him.

---

[1]Section 78B-15-602 of the Utah Uniform Parentage Act provides that "a man whose paternity of the child is to be adjudicated" has standing to maintain a proceeding to adjudicate parentage. Utah Code Ann. § 78B-15-602(3) (2008). Section 78B-15-603 of the Act also includes "a man whose paternity of the child is to be adjudicated" among those persons who "shall be joined as parties in a proceeding to adjudicate parentage." *Id.* § 78B-15-603(2).

¶31 "Every parent has the duty to support the children he has brought into the world." *Gulley v. Gulley*, 570 P.2d 127, 128–29 (Utah 1977). *See also* Utah Code Ann. § 78B-12-105(1) (2008) ("Every mother and father shall support their children."). Argenziano is apparently the father of this child. Reinstatement of the original divorce decree that Husband is the child's father would doubtless, as a practical matter, incidentally benefit Argenziano's quest to evade his duty of support. But incidental benefit is not the test for appellate standing.[2]

¶32 "[T]he initial inquiry of any court should always be to determine whether the requested action is within its jurisdiction. When a matter is outside the court's jurisdiction it retains only the authority to dismiss the action." *Varian–Eimac, Inc. v. Lamoreaux*, 767 P.2d 569, 570 (Utah Ct. App. 1989). That is the case here. Consequently, I would dismiss the appeal.[3]

_____

J. Frederic Voros Jr., Judge

---

[2]Argenziano also argues that he had standing to intervene in the trial court under statute and the common law. Because Argenziano clearly lacks two of the three elements identified in *Chen* for standing to appeal, *see Chen*, 2005 UT 68, ¶ 50, I would leave for another day the more difficult questions of whether a putative father may intervene in a divorce proceeding to *enforce* the presumption of paternity and, if so, whether and how the intervenor must establish standing to intervene. *See generally Pearson v. Pearson*, 2008 UT 24, ¶¶ 11–26, 182 P.3d 353 (discussing the standing requirements for an intervenor to *challenge* the presumption of paternity in a divorce proceeding); Joan Steinman, *Irregulars: The Appellate Rights of Persons Who Are Not Full-Fledged Parties*, 39 Ga. L. Rev. 411, 423–52 (2005) (discussing the relationship between standing and intervention at both the trial and appellate level and the disagreement among the federal courts over the requirements of standing to intervene).

[3]The fact that Argenziano loses whether we affirm or dismiss makes this opinion feel more like a concurrence than a dissent. But affirming requires jurisdiction, which, in my judgment, we lack. Therefore I dissent from the order of this court affirming the trial court's judgment.