**2025 UT App 144**

## THE UTAH COURT OF APPEALS

JESSE D. BROWN,
Appellant,
*v.*
BONNIE B. AMIDAN,
Appellee.

Opinion
No. 20230995-CA
Filed October 9, 2025

Second District Court, Ogden Department
The Honorable Cristina P. Ortega
No. 190904219

Elizabeth A. Knudson, Attorney for Appellant

Jason M. Yancey and Keith M. Backman,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGE RYAN M. HARRIS concurred. JUDGE RYAN D. TENNEY
concurred, with opinion.

MORTENSEN, Judge:

¶1 Jesse Brown cried foul when his siblings persuaded their mother, Dorothy Brown, to amend her trust to divide property in Weber County equally among her children. After Dorothy[1] died, Jesse sued his sister Bonnie Amidan, the trustee, to reform the trust to reflect the terms of a prior amendment, which would have given him the entire property. Finding that Dorothy had

---

1. Because many of the individuals in this case "share the same last name, we follow our usual practice of referring to them by their first names, with no disrespect intended by the apparent informality." *Mower v. Mower*, 2023 UT App 10, ¶ 1 n.1, 525 P.3d 110.

testamentary capacity and that the amended trust wasn't the product of Bonnie's undue influence, the district court denied the relief sought in the complaint.

¶2     On appeal, Jesse argues that the court erred when it (1) barred Jesse's expert from testifying in rebuttal after Bonnie's case in chief, (2) reformed the trust to remove a no-contest provision, and (3) determined that, although a confidential relationship existed between Bonnie and Dorothy, Bonnie rebutted the presumption that the amended trust was the result of her undue influence. We disagree with Jesse's assertions and affirm the district court's rulings.

BACKGROUND[2]

*Dorothy Establishes and Amends the Trust*

¶3     Dorothy and her husband, Carmon Brown, had five children: Stephen, Jesse, Bonnie, Larry, and Gary. Dorothy and Carmon owned property (the Canyon Property) near Causey Reservoir in Weber County, Utah. After Carmon died in 2002, Dorothy established a trust to divide her estate, including the Canyon Property, evenly among the five children upon her death.

---

2. "Following a bench trial, we recite the facts from the record in the light most favorable to the findings of the trial court and present conflicting evidence only as necessary to understand issues raised on appeal." *Hillam v. Hillam*, 2024 UT App 102, n.2, 554 P.3d 1137 (cleaned up). Moreover, because Jesse failed to include many of the relevant transcripts and other papers in the record, we must "presume[] the regularity of the proceedings" insofar as they relate to those missing papers. *Capital One Bank (USA), NA v. Roberts*, 2014 UT App 120, ¶ 2, 327 P.3d 1226 (per curiam).

¶4    In 2003, Dorothy amended the trust to leave the Canyon Property to Jesse. The rest of the estate was still to be divided equally among the five children. The other children did not learn about Dorothy's decision to leave the Canyon Property to Jesse until much later, when Bonnie and Stephen obtained a copy of the amended trust for tax purposes. The discovery led to family strife for years.

¶5    Dorothy again amended the trust twice in 2011 and once more in 2016. None of these amendments changed the provision that left the Canyon Property to Jesse. However, the 2016 amendment did differ from the prior iterations in one important respect. While Dorothy was a trustee in each of the prior versions, the 2016 amendment designated Bonnie as the "[s]ole [t]rustee."

¶6    On September 12, 2017, Dorothy—at the age of 96—fell and broke multiple bones. A few days later, Bonnie and Jesse argued over some of the disbursements that Bonnie had made on behalf of the trust. The fight distressed Dorothy, and she asked Larry, "Why do my kids always have to fight?" Larry responded, "You know why, Mom. That addendum or trust change has us all upset." Larry suggested that Dorothy could end the fighting by amending the trust to divide the Canyon Property equally among the children. Dorothy responded, "Do it."

¶7    Larry and Stephen then had a lawyer draft an amended trust document for Dorothy to sign. After she fell, Dorothy had been taking pain medication every day, but on September 20, 2017, she held off on taking the medication until the afternoon. That morning, Bonnie twice read to Dorothy a statement explaining that the trust would be amended to leave all the trust property—including the Canyon Property—in equal shares to the five children. Then, with Bonnie steadying her hand, Dorothy signed an instrument amending the trust (the Final Trust).

¶8    In addition to changing the provision regarding the Canyon Property, the Final Trust again designated Bonnie as the

sole trustee. It also included a no-contest provision.[3] But Dorothy had not requested such a provision, Bonnie was unaware of it, and Bonnie did not read it to Dorothy.

¶9    Dorothy passed away in December 2018.

*Jesse Challenges the Final Trust*

¶10    In July 2019, Jesse sued Bonnie, both in her personal capacity and in her capacity as trustee. The complaint asserted that a confidential relationship existed between Bonnie and Dorothy and that the Final Trust was the result of Bonnie's undue influence. In support, the complaint made the following allegations:

- Dorothy fell and was seriously injured just days before the Final Trust was executed.

- Bonnie had control over Dorothy's finances and healthcare decisions.

- Dorothy had been diagnosed with dementia in 2016 and had trouble performing basic tasks.

- Dorothy was "heavily medicated" and "unable to use her hands and arms" on the day that she executed the Final Trust.

---

3. The no-contest provision "revoked" "all benefits" from "any beneficiary" who, "directly or indirectly, contest[ed] the validity" of the Final Trust. The provision also revoked all benefits from the "beneficiary's issue." In other words, the provision disinherited a beneficiary—and that person's heirs—if the person challenged the Final Trust.

- The "formula" that Dorothy had previously used to amend the trust was not followed in the drafting and execution of the Final Trust.

- Bonnie stood to gain from the Final Trust based on its new disposition of the Canyon Property.

The complaint sought reformation of the Final Trust to reflect the terms of the 2016 amendment, which had retained the provision leaving the Canyon Property to Jesse. In the alternative, the complaint sought to have the Final Trust declared void.

¶11   Jesse retained an expert witness, Dr. Rosen, to opine on Dorothy's testamentary capacity. Bonnie elected to receive a written report from Dr. Rosen under rule 26(a)(4) of the Utah Rules of Civil Procedure. Bonnie also filed a motion in limine to bar Dr. Rosen from testifying about the undue influence claim. Jesse did not oppose the motion, and the district court granted it.

¶12   Bonnie also retained an expert, Dr. Finkel, to "opine on Dorothy's condition and capacity" on the day she signed the Final Trust. Jesse elected to depose Dr. Finkel.

¶13   The matter proceeded to a six-day bench trial. The record on appeal only contains transcripts of the testimony of Bonnie, Stephen, Larry, and Dr. Finkel.[4] The district court's minutes show that several additional witnesses testified, including Jesse and Dr. Rosen.

¶14   Dr. Finkel acknowledged that Dorothy had "mild cognitive impairment." But he explained that a person with that diagnosis would generally possess testamentary capacity "unless the document was extremely complex." He also testified that Dorothy

---

4. The district court's minutes note that Dr. Finkel testified on direct-examination, cross, and redirect. However, the transcripts submitted on appeal contain only Dr. Finkel's direct testimony.

did not have dementia and that her reasoning, insight, and judgment were "okay." Dr. Finkel further stated that none of the children who stood to gain or lose from an amendment to the trust had been "isolated" from Dorothy. He ultimately testified that Dorothy had testamentary capacity when she signed the Final Trust and that she did not do so based on undue influence.[5]

¶15 After the defense concluded its case in chief, Jesse sought to recall Dr. Rosen in rebuttal. Bonnie objected on essentially two grounds. First, she argued that Jesse had failed to designate Dr. Rosen as a rebuttal witness. Second, Bonnie pointed out that Dr. Rosen had already testified to the opinions in her report and that the district court's order on the motion in limine barred her from testifying to any other opinions; therefore, according to Bonnie, Dr. Rosen's rebuttal would have been needlessly cumulative under rule 403 of the Utah Rules of Evidence.

¶16 The district court sustained Bonnie's objection and barred Dr. Rosen from testifying in rebuttal. During closing arguments, Bonnie maintained "that if the [c]ourt were convinced that reformation were appropriate in this case, i.e., that the inclusion of the no contest provision did not conform with [Dorothy's] intention, then the [c]ourt had discretion and authority to reform the [Final Trust] to conform to [Dorothy's] intention by removing the no contest provision." The court requested supplemental briefing on the issue.

¶17 After the parties briefed the no-contest issue, the court issued a ruling setting forth its findings of fact and conclusions of law related to the bench trial. It determined that (1) a confidential relationship existed between Bonnie and Dorothy, which created a rebuttable presumption that the Final Trust was the product of Bonnie's undue influence, (2) Bonnie rebutted that presumption, and (3) Dorothy did not intend to include the no-contest

---

5. Based on our review of the record, Dr. Finkel was the only witness who specifically testified about undue influence at trial.

provision. Consequently, the court found that the Final Trust was valid. Based on the supplemental briefing, the court also determined it could reform the Final Trust to remove the no-contest provision, and it did so.

¶18    Jesse appeals.

ISSUES AND STANDARDS OF REVIEW

¶19    Jesse raises multiple issues on appeal. He argues first that the district court should have allowed Dr. Rosen to testify in rebuttal. We review a court's exclusion of expert testimony for an abuse of discretion and will reverse only if the decision "exceeds the limits of reasonability." *State v. Clopten*, 2009 UT 84, ¶ 6, 223 P.3d 1103 (cleaned up).

¶20    Next, Jesse challenges the district court's decision to reform the Final Trust despite Bonnie's failure to raise reformation as a potential remedy until closing arguments. The court's ruling that it could reform the trust under this circumstance was based on a legal conclusion that we review on "a correction-of-error standard." *Cowley v. Porter*, 2005 UT App 518, ¶ 31, 127 P.3d 1224. Similarly, Jesse asserts that the court erroneously determined that Bonnie met her burden to establish that reformation was appropriate under the Utah Uniform Trust Code. We review the court's interpretation of a statute for correctness. *Reller v. Reller*, 2012 UT App 323, ¶ 9, 291 P.3d 813. However, because "reformation is an equitable remedy," *Kartchner v. Kartchner*, 2014 UT App 195, ¶ 37, 334 P.3d 1 (cleaned up), "we defer to [the] trial court's factual findings unless there is clear error," *Reller*, 2012 UT App 323, ¶ 9 (cleaned up).

¶21    Finally, Jesse maintains that the district court erroneously found that Bonnie met her burden to establish that the Final Trust was not the product of undue influence. "We review the trial court's ultimate legal conclusion of lack of undue influence for

correctness, but we defer to the trial court's specific findings of fact underlying its determination that the deceased was competent to make a [trust] and that the [trust] was not made under undue influence, reviewing the factual findings only for clear error." *Ellsworth v. Huffstatler*, 2016 UT App 211, ¶ 26, 385 P.3d 737 (cleaned up).

ANALYSIS

¶22 On the record before us, we conclude that the court did not err when it (1) excluded Dr. Rosen's rebuttal testimony, (2) reformed the Final Trust to remove the no-contest provision, and (3) determined that the Final Trust was not the product of Bonnie's undue influence. We explain each conclusion in turn.

I. Expert Testimony

¶23 Jesse argues that the district court should have admitted Dr. Rosen's rebuttal testimony because Dr. Rosen was properly disclosed as an expert. We decline to address the merits of the argument for two interrelated reasons. First, we are in no position to second-guess the court's decision because it ruled from the bench and Jesse hasn't provided a transcript of the ruling on appeal. The bench ruling was memorialized in a written order that sustained Bonnie's objection and barred Dr. Rosen from testifying "[f]or the reasons" stated in the objection. As noted, those reasons were that (1) Jesse did not designate Dr. Rosen as a rebuttal witness and (2) the testimony was needlessly cumulative under rule 403 of the Utah Rules of Evidence. Without the transcript, "we must presume the correctness" of the court's ruling. *Express Recovery Services, Inc. v. Cochron*, 2013 UT App 43, ¶ 3, 299 P.3d 608 (per curiam).

¶24 Second, in his principal brief, Jesse failed to specifically attack the district court's conclusion that Dr. Rosen's rebuttal testimony was needlessly cumulative and therefore excludable

under rule 403. Our caselaw makes clear that we must affirm a court's ruling when it is based on multiple "independent alternative grounds" and the "appellant challenges only one of those grounds." *See, e.g.*, *Salt Lake County v. Butler, Crockett & Walsh Dev. Corp.*, 2013 UT App 30, ¶ 28, 297 P.3d 38. Jesse's failure to attack the court's rule 403 determination until his reply brief leaves this alternative ground effectively unaddressed. *See Cottam v. IHC Health Services Inc.*, 2024 UT App 19, ¶ 22, 544 P.3d 1051 (explaining that an appellant's failure to raise an issue in its principal brief generally results in the issue being waived). We therefore must affirm.

¶25 Because Jesse failed to include a transcript of the district court's ruling and does not address one of the two independent alternative grounds for the ruling in his principal brief, Jesse has not met his burden of persuasion on appeal, and, on that basis, we affirm the court's exclusion of Dr. Rosen's rebuttal testimony.

## II. No-Contest Provision

¶26 Jesse argues next that the district court erred when it reformed the Final Trust to remove the no-contest clause. In support, he points out that Bonnie did not raise reformation as a possibility until closing arguments and asserts that Bonnie failed to establish by clear and convincing evidence Dorothy's intent regarding the no-contest clause. We are not persuaded by either argument.

### A. Failure to Raise Reformation Until Closing Arguments

¶27 Jesse asserts that the district court should not have considered Bonnie's reformation argument because Bonnie failed to plead it and raised it for the first time during closing arguments. We see no issue with the district court's decision. For one thing, it was Jesse—not Bonnie—who placed reformation on the table in the first place. Bonnie merely argued

that the court could remove the no-contest provision if it decided to reform the Final Trust. And Jesse cites no authority for his implied argument that a court can only reform a trust in a way that conforms with the wishes of the party who originally raised reformation.[6]

¶28    Jesse's argument is also belied by the plain language of rule 54(c) of the Utah Rules of Civil Procedure. The rule provides in relevant part that "[e]very" judgment other than a default judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Utah R. Civ. P. 54(c). The rule "requires trial courts to be liberal in awarding appropriate relief justified by the facts developed at trial, as long as the failure to request a particular form of relief does not prejudice a party in the preparation or trial of the case." *Cowley v. Porter*, 2005 UT App 518, ¶ 38, 127 P.3d 1224 (cleaned up); *see also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424–25 (1975) (noting that the test is the same under the federal rule). Absent that prejudice, "it is necessary only that the relief granted be supported by the evidence and be a permissible form of relief for the claims litigated." *Cowley*, 2005 UT App 518, ¶ 38 (cleaned up). By requesting supplemental briefing on whether it could reform the Final Trust to remove the no-contest provision, the court provided Jesse with notice of the issue and an opportunity to address it. And as we explain, *infra* ¶¶ 30–33, the relief granted by the court was proper under Utah law.

¶29    For these reasons, we discern no error in the court's decision to reform the Final Trust to remove the no-contest provision despite Bonnie's failure to plead reformation or raise it until closing arguments.

---

6. In fact, the court's removal of the provision ultimately benefited Jesse. Had the provision remained, Jesse would have lost his entire share of the estate under the Final Trust.

B. Reformation Under the Utah Uniform Trust Code

¶30 Next, we address whether the district court had the statutory authority to reform the Final Trust and, if so, whether its factual findings supported its decision. We answer both questions in the affirmative.

¶31 Section 415 of the Utah Uniform Trust Code, which is identical to section 415 of the Uniform Trust Code (UTC), provides that "[t]he court may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement." Utah Code § 75B-2-415. The UTC's official comment to section 415 explains that the provision "applies whether the mistake is one of expression or one of inducement" and that "[a] mistake of expression occurs when the terms of the trust misstate the settlor's intention, fail to include a term that was intended to be included, or include a term that was not intended to be included." Unif. Tr. Code § 415 cmt. (Unif. L. Comm'n 2023).[7] The text of section 75B-2-415 and the UTC comment make clear that, assuming the district court made

---

7. Because the legislature has not adopted the UTC's official comments, they are not binding. However, they do serve as persuasive authority in our interpretation of the Utah Uniform Trust Code. *Cf. J.R. Simplot Co. v. Sales King Int'l, Inc.*, 2000 UT 92, ¶ 40, 17 P.3d 1100 ("The official comments to the [Uniform Commercial Code] have not been adopted by the Utah legislature and are therefore not authoritative, but rather, persuasive as to the code's interpretation.").

It bears mention that the original version of the comment, which is cited by the parties in their briefing, contains an apparent error that has since been corrected. *See* Unif. Tr. Code § 415 cmt. (Unif. L. Comm'n, amended 2004) (striking "excluded" and replacing it with "included" in the clause originally stating "or include a term that was not intended to be excluded").

the relevant findings, it had the authority to reform the Final Trust to remove the no-contest provision.[8]

¶32    And here, the court made detailed findings that the no-contest provision was included in the Final Trust based on a mistake of expression. Jesse has not challenged those findings, and we conclude that they are not clearly erroneous. Indeed, there is no evidence that Dorothy specifically requested the no-contest clause. For one thing, it was Stephen and Larry—not Dorothy—who contacted the lawyer to draft the Final Trust. And there is no evidence that Dorothy spoke to the drafting lawyer. Moreover, Bonnie testified that neither she nor Dorothy knew that the no-contest provision was included in the Final Trust and that she had not read it to Dorothy.

¶33    For these reasons, the district court had the authority under the Utah Uniform Trust Code to reform the Final Trust to remove the no-contest provision.

### III. Undue Influence

¶34    Finally, Jesse argues that the district court erroneously determined that the Final Trust was not the result of Bonnie's undue influence. He asserts that "[i]n the voluminous medical records and testimony" presented at trial, "sight was lost of the fact that Dorothy's condition on September 20, 2017 [was] the critical inquiry" in this case. Indeed, Jesse claims that "Dorothy's

---

8. Dorothy wanted her children to stop fighting over the Canyon Property, and she could have encouraged them to do so by disinheriting any of her children who contested the Final Trust. Consequently, the district court likely would not have erred if it determined that the no-contest provision reflected Dorothy's intent—again, assuming the court made the appropriate findings. As a practical matter, then, Jesse stood to lose his entire share of the estate if the court determined it lacked the authority to remove the no-contest provision.

physical and mental condition made her particularly susceptible to undue influence" at that time.

¶35 Jesse fails to carry his burden on appeal. He has not marshaled the evidence in favor of the district court's factual findings underlying the conclusion that the Final Trust was not the product of Bonnie's undue influence. *See Pankhurst v. Pankhurst*, 2022 UT App 36, ¶ 15, 508 P.3d 612 ("A party challenging a district court's factual findings on appeal bears a heavy burden of persuasion in demonstrating that the court's findings are clearly erroneous." (cleaned up)). While this failure is not technically fatal, *see Grimm v. DxNA LLC*, 2018 UT App 115, ¶ 15, 427 P.3d 571, Jesse also has not included many of the relevant transcripts on appeal, as we have already noted. Although the record contains the ruling itself, the only trial testimony in the record that specifically addresses undue influence comes from Dr. Finkel. And he testified that the Final Trust was not the product of Bonnie's undue influence. We therefore must presume that the missing trial transcripts also supported the district court's determination on this point. *See Capital One Bank (USA), NA v. Roberts*, 2014 UT App 120, ¶ 2, 327 P.3d 1226 (per curiam) ("In the absence of the transcript on appeal, the reviewing court presumes the regularity of the proceedings below."). For these reasons, we again are in no place to second-guess the district court's ruling.

¶36 Because Jesse has not marshaled the evidence in favor of the factual findings underlying the district court's determination that the Final Trust was not the result of Bonnie's undue influence, and because Jesse has not included essential parts of the record on appeal, we affirm the court's ruling on this point.

CONCLUSION

¶37 Jesse has failed to establish that the district court erred by excluding Dr. Rosen's rebuttal testimony, reforming the Final Trust to remove the no-contest provision, or finding that Bonnie

met her burden to rebut the presumption that the Final Trust was the product of Bonnie's undue influence. We therefore affirm.

---

TENNEY, Judge (concurring):

¶38    I join the above opinion in full. I write separately to offer a few additional thoughts on the question addressed in footnote 2—namely, how an appellate court should view the facts when it reviews a decision that was issued following a bench trial.

¶39    There is a split of authority in our supreme court's jurisprudence about whether the facts are viewed in the light most favorable to the verdict in such an appeal. In a few cases issued a few decades ago, the supreme court held that an appellate court does not view the facts in the light most favorable to the decision in such a circumstance. *See In re Z.D.*, 2006 UT 54, ¶ 35, 147 P.3d 401; *Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1284 n.2 (Utah 1993); *State v. Walker*, 743 P.2d 191, 192–93 (Utah 1987). But in two other cases from roughly the same era, the supreme court did the opposite, employing the "light most favorable" standard even though it was reviewing a decision issued after a bench trial. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 72, 99 P.3d 801; *State v. Layman*, 1999 UT 79, ¶¶ 1, 3, 985 P.2d 911.

¶40    In *In re K.S.*, 2023 UT App 138, ¶¶ 27–29, 540 P.3d 705, the parties pointed to this split, briefed the question, and disagreed about how we should view the facts, but we were able to decide the appeal without resolving the dispute either way. In *In re S.M.*, 2024 UT App 135, ¶ 25 n.3, 557 P.3d 649, we again acknowledged this problem, but we were again able to resolve the case at hand without answering the question.

¶41    This court considers appeals from bench trials with some frequency, and at some point, it becomes unwieldy to leave the question hanging. In the opinion we issue today, we've said, in footnote 2, that we would view the facts that were found by the

district court in the light most favorable to the court's ruling, and we've relied on those facts in resolving the legal claims before us, so this appeal seems to be as good as any in which to lay down a marker.

¶42 In reviewing the relevant cases on this point, two things stand out to me. First, in its more recent cases, our supreme court has consistently held that an appellate court does review the facts in the light most favorable to a bench trial decision. *See, e.g., Wittingham, LLC v. TNE Ltd. P'ship*, 2024 UT 23, n.2, 554 P.3d 924; *In re Western Ins. Co.*, 2022 UT 38, ¶ 7 n.1, 521 P.3d 851; *Rosser v. Rosser*, 2021 UT 71, n.2, 502 P.3d 294; *State v. Jok*, 2021 UT 35, ¶ 3 n.3, 493 P.3d 665; *Gold's Gym Int'l Inc. v. Chamberlain*, 2020 UT 20, n.1, 471 P.3d 170; *Utah State Tax Comm'n v. See's Candies, Inc.*, 2018 UT 57, ¶ 5 n.2, 435 P.3d 147. In light of these cases, it appears that the decisions going the other way have been overruled *sub silentio*. Second, narrowing the field to the court of appeals' cases, there are dozens of cases that postdate *In re Z.D.* in which this court has said that it would view the facts in the light most favorable to the decision from a bench trial. Given this, it appears that the court of appeals has essentially voted with its feet and implicitly chosen which line of cases it will institutionally follow.

¶43 As a result, despite the hesitancy that this court expressed in *In re K.S.* and *In re S.M.*, with the benefit of a closer look, it seems to me that there's no need for any lingering hesitation. Consistent with our supreme court's recent decisions and ours too, I believe that when reviewing bench trials and jury trials alike, we view the facts in the light most favorable to the verdict. Unless the supreme court says otherwise, I'm of the view that this is the controlling rule.

---